IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CLIFFORD LAIBHEN[1], :
:
Petitioner : CIVIL ACTION NO. 3:CV-14-2055
:
v. : (Judge Nealon)
:
WARDEN BALTAZAR, et al., :
:
Respondents :

FILED
SCRANTON
DEC 17 2014
PER _____
DEPUTY CLERK

**MEMORANDUM**

Petitioner, Clifford Liabhen, an inmate currently confined in the United States Penitentiary at Allenwood-Low Security, White Deer, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of the prohibited acts of "Disposing of any Item During a Search or Attempt to Search" in violation of Code 115, and "Refusing to Obey an Order of any Staff Member" in violation of Code 307. (Doc. 1, Pet.). The petition is ripe for consideration and, for the reasons that follow, will be denied.

I.   **Background**

Petitioner is currently serving a term of imprisonment for his conviction in the

---

[1] Respondents note that although Liabhen has spelled his last name as "Laibhen" in his habeas petition, Bureau of Prison records reflect that his name is actually spelled Liabhen. (Doc. 5-1 at 8).

Middle District of North Carolina. He is scheduled for release on July 12, 2017, via good conduct time. On January 21, 2013, while confined in the Schuylkill Federal Correctional Institution ("FCI-Schuylkill") in Minersville, Pennsylvania, Petitioner was stopped by staff in the laundry area. Officer Switay and Counselor Kranzel entered the camp, and Officer Switay began to perform a pat-down search of Petitioner. As he began the search, Petitioner ran out of the unit. Although both Switay and Kranzel ordered him to stop, Petitioner continued to run. As Officer Switay chased after Petitioner, he observed him throw something into the food service area. After Petitioner stopped running near the Unicor Warehouse, he was handcuffed and placed in the Special Housing Unit. A search of the food service area where Petitioner threw the item revealed a Samsung cell phone which was still open.

The cellphone was later examined and revealed that calls had been made to two (2) telephone numbers on Petitioner's phone listing. The persons listed for these numbers were his spouse and a friend. Also found on the cellphone was a photograph of Petitioner holding dumbbells while in the weight room at FCI-Schuylkill.

On January 21, 2013, Incident Report No. 2399874 was issued to Petitioner charging him with Code 108, 115, 198 and 307 violations (possession of a cell phone; disposing of an item during a search; interfering with staff; and refusing an order). He was provided with a copy of the report at 6:00 p.m. that evening. The incident

report was suspended, pending referral of the matter to the FBI for possible prosecution. The FBI subsequently released the matter and the incident report was re-activated with Petitioner being questioned on February 22, 2013. At that time, he made no statement in response to the charges. Due to the severity of the charges, the Unit Disciplinary Committee ("UDC") referred the charges to a Disciplinary Hearing Officer ("DHO") for disciplinary proceedings.

On February 27, 2013, Petitioner was provided with a copy of the "Notice of Discipline Hearing Before the DHO" form advising him of the charges against him and the right to have a staff representative and witnesses present at the DHO hearing. (Doc. 5-1 at 20). He signed the form indicating that he wanted to have Ms. Lucas as his staff representative and did not wish to have witnesses. He was also provided with and signed the "Inmate Rights at Discipline Hearing" form on the same date, specifically advising him that he had the following rights at the DHO hearing:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];

2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him]. However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If [he] elect[ed] not to appear before the DHO, [he] may still have witnesses and a staff representative appear on [his] behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendars days of notice of the DHO's decision and disposition.

(Id. at 22).

The DHO hearing took place on March 25, 2013 before DHO Bittenbender. (Id. at 26, DHO Report). Ms. Lucas was in attendance as Petitioner's staff representative, noted no discrepancies in the discipline process, and stated that she had met with Petitioner before the hearing to discuss the case. The documents before the DHO were also provided to her.

At the beginning of the hearing, Petitioner was advised of his rights before the DHO and indicated that he understood them. He chose to provide the following statement: "I have no verbal statement to make other than I ran from the officer

because he was pushing my head into the wall when he was searching me." (Id. at 26). The DHO noted that Petitioner became belligerent during the hearing when asked about the cellphone that was recovered, including the phone numbers on the phone directly linked to him and the photograph of him appearing on the phone. Petitioner stated "I guess that's academic at this point." (Id.).

Petitioner submitted to the DHO a handwritten statement dated 3/11/13 questioning why there was an undocumented delay in his disciplinary proceedings. The DHO explained that Petitioner was provided with a copy of the report in a timely manner but then it was immediately referred to the FBI for possible prosecution. The matter was released by the FBI on 2/22/13, and the UDC hearing was conducted within five (5) working days thereof. To the extent Petitioner wanted to see the Warden's signature approving the delay caused by the FBI investigation, the DHO explained that the Warden's signature was not required. (Id.)

Petitioner did not request to have any witnesses appear at the hearing. Documentary evidence, in addition to the Incident Report and the Investigation considered by the DHO, included a Memorandum from Lieutenant J. Reed dated January 21, 2013, and a Memorandum from Counselor Kranzel dated January 21, 2013, corroborating the evidence cited in the Incident Report, a photograph taken by Officer Munson dated January 21, 2013 depicting the cellular telephone as described

in the Kranzel Memorandum, and a Mobile Forensics Report and Petitioner's TRUVIEW phone listing corroborating the evidence cited in the Incident Report.[2] (Doc. 5-1 at 3-29).

After reviewing the evidence, the DHO found that the disciplinary charges against Petitioner were supported by the greater weight of the evidence. (Doc. 5-1 at 28). The DHO accepted the statements of Officer Switay and Counselor Kranzel as credible, as they derived no known benefit by providing false information. He found that the direct link analysis of the inmate's telephone contact listing and the extraction of data provided from the Forensic Analysis taken from the cellular telephone linked Petitioner to the phone. The reporting officer witnessed Petitioner throw something while running away from him, and the phone, which was in an on and open position, was found in that immediate area. The DHO determined that the charges were supported in light of the foregoing, as well as Petitioner's actions in fleeing from the officer and refusing to obey orders to stop. As such, he found the greater weight of evidence supported a finding of guilt with respect to the acts of

---

[2] The report linked two (2) telephone numbers as being called from the Samsung cellular telephone recovered. These two (2) phone numbers appear on Petitioner's telephone account as a spouse and a friend. These numbers were called from the cellular telephone on various dates and times. In addition, a digital photograph was extracted from the phone's memory which includes a photo of Petitioner holding two dumbbell weights inside the prison's weight room area. (Doc. 5-1 at 28).

Disposing of Item during a Search (Code 115) and Refusing to Obey an Order (Code 307). The other two charges (108 and 198) were found to be duplicitive to the Code 115 charge and were expunged from the report. On the Code 115 violation, Petitioner was sanctioned to sixty (60) days disciplinary segregation, the disallowance of firty-one (41) days of Good Conduct Time and the forfeiture of non-vested good conduct time of 324 days, along with the loss of various privileges and a monetary fine. On the Code 307 violation, he received thirty (30) days disciplinary segregation, the disallowance of thirteen (13) days of Good Conduct Time, the forfeiture of thirty (30) days non-vested good conduct time, and the loss of privileges.

In the instant habeas petition, Petitioner raises various due process challenges to his disciplinary hearing proceedings. He challenges the ineffectiveness of his staff representative in only meeting with him once prior to the start of the hearing in which to prepare a defense. He further claims that his staff representative was inadequate in that she made no attempt to obtain a lesser sanction for him and failed to assist him with his appeals. He contends that the delay between the incident report and the date of his UDC hearing violated due process, as well as the lack of the warden's written approval for any such delay. While not entirely clear, Petitioner also seems to suggest that the DHO was not impartial. As relief, Petitioner requests that all sanctions be rescinded and removed from his record, and that all Good Conduct time

be restored.

## II. Legal Standard

Petitioner alleges that his due process rights were violated during the disciplinary hearing. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). However, a prisoner facing serious institutional sanctions such as the loss of good time credits is entitled to some procedural protection before penalties can be imposed. Id. at 563-71.

Wolff set forth the following five (5) requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges at least twenty-four (24) hours in advance of the hearing; (3) an opportunity to call witnesses and present documentary evidence when doing so would not be unduly hazardous to institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-71. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985), requiring that there be some evidence which supports the conclusion

of the disciplinary tribunal. See also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence"). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007) (citations omitted).

### III. Discussion

The instant petition is found to be without merit in that the procedural requirements of Wolff and Hill were met. As set forth above, Petitioner received the incident report on January 21, 2013. On February 22, 2013, the UDC referred the

incident report to the DHO for a hearing after the FBI released the underlying matter. Petitioner received notice of the hearing and was informed of his rights before the DHO. His hearing occurred on March 25, 2013, and he had a staff representative at the hearing. Although he was provided with the opportunity to call witnesses, he chose not to present any.

Petitioner also received the DHO's written decision setting forth the evidence relied upon and the rationale for the decision made. It certainly cannot be argued that some evidence did not exist in support of the disciplinary finding. Statements were submitted by staff with respect to Petitioner running away from them, refusing orders to stop, and then tossing something as he ran. Thereafter, a search of the area where Petitioner discarded an item revealed an open cellphone that contained phone numbers on Petitioner's call list for his spouse and friend, as corroborated by a Mobile Forensics Analysis Report and Petitioner's TRUVIEW phone listing. The phone also contained a picture of Petitioner in the weight room of the prison. Clearly, some evidence existed to support the DHO's findings.

While Petitioner may have been dissatisfied with the passage of time between the issuance of the incident report and the date of his UDC hearing, any delay did not violate any rights guaranteed by the Due Process Clause. Any delay was due to the suspension of the incident report pending referral of the matter to the FBI for possible

prosecution. When the FBI declined to prosecute, the incident report was reactivated and Petitioner was questioned on February 22, 2013, at which time the UDC referred the charges to a DHO.

Petitioner also challenges the adequacy of the representation he received from his staff representative in that she failed to meet with him enough before the hearing, failed to provide the DHO with a written statement Petitioner allegedly provided to her, and failed to assist him on appeal.

It is well established that prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Wolff, 418 U.S. at 569-70. Instead, due process requires that an inmate be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at 570. Neither of the above factors are applicable to Petitioner's case. Petitioner is not illiterate, nor does he contend to be. Furthermore, at the outset of the disciplinary proceedings, Petitioner confirmed that he understood his due process rights and that he was ready to proceed with the hearing. (Doc. 5-1 at 26). Based on the foregoing, there is no evidence that Petitioner was entitled to a staff representative under Wolff.

11

To the extent Petitioner alleges that his staff representative was ineffective and inadequate, this assertion also fails to state a due process claim. Although not constitutionally mandated, Petitioner was provided with a staff representative. However, this does not necessarily make Petitioner's challenges to the adequacy of Ms. Lucas' representation rise to the level of a due process claim. Petitioner admits that he did meet with Ms. Lucas prior to the start of the hearing. In addition, at the hearing he cited no procedural issues, and all documents in reference to the case were disclosed by the DHO to Ms. Lucas. (Doc. 5-1 at 26). No documentary evidence was submitted by Petitioner other than his handwritten statement regarding the issue of the delay in the UDC hearing, and he did not reference any lacking documentary evidence that had not been submitted. Moreover, to the extent that Petitioner may have disagreed with any other actions or inactions by his representative, Ms. Lucas was not enlisted to act as Petitioner's counsel, nor does Wolff require her to serve in that capacity. Wolff, 418 U.S. at 556, 570.

Finally, Petitioner generally challenges the impartiality of the DHO, but fails to assert any facts in support of his claim. He merely suggests a "conflict of interest." (Doc. 1 at 7). "In order to ensure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b).

DHO Bittenbender was not alleged to have been involved in any aspect of witnessing, reporting, investigating, or playing any part in having the charges referred to the DHO. Further, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009). In the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F. App'x 488 (3d Cir. 2007). Accordingly, the record of these disciplinary proceedings affirmatively reveal that Petitioner was afforded all the rights set forth in Wolff. For these reasons, the instant petition for writ of habeas corpus will be denied.

    A separate Order will be issued.

Dated: December 15, 2014

                                                    **United States District Judge**